UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC OHLMS, WILLIAM KARRAS, and JOSHUA FOX, | ) ) ) ) |
| Plaintiffs, | ) No. 4:16-CV-213 RLW ) |
| v. | ) ) ) |
| CITY OF FOLEY, MISSOURI, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant City of Foley, Missouri's Motion for Summary Judgment (ECF No. 18). This matter is fully briefed and ready for disposition.

## BACKGROUND

Defendant City of Foley, Missouri (hereinafter the "City") has a population between 110 and 150 residents. (Defendant City of Foley, Missouri's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("DSUMF"), ECF No. 19, ¶2). The City's government is comprised of a Mayor and a Board of Aldermen (the "Board").

Plaintiff Eric Ohlms became the City Clerk for the City on January 3, 2014. (DSUMF, ¶8). Plaintiff Joshua Fox became a full time police officer for the City on April 24, 2014. (DSUMF, ¶10). Plaintiff Williams Karras became the Chief of Police for the City in September, 2014. (DSUMF, ¶9).

At the end of 2014, the auditor for the State of Missouri completed an audit of the City. (Plaintiffs' Additional Statements of Uncontroverted Material Facts ("PASUMF"), ECF No. 22, ¶28). The audit found that the City had not reimbursed to the State $290,000 from the revenue it

generated from the municipal court under a law known as "Mack's Creek". (*Id.*). The City had no financial means to reimburse the State of Missouri for the $290,000. (PASUMF, ¶29). The Board blamed the city legal counsel for the advice to withhold the funds. (PASUMF, ¶30).

In April 2015, Keith Vertrees became the elected mayor of the City. (DSUMF, ¶4; PASUMF, ¶31). Mr. Vertrees asked for a police vehicle to drive, a police radio, and a duty service number ("DSN") from the Lincoln County Sheriff's Department. (PASUMF, ¶31). As Mayor, Vertrees had no authority to control the daily operations of the city administration or the police department. (PASUMF, ¶33). The city attorney, Jeff Robertson, told Mayor Vertrees that as a mayor of a fourth class city he had no authority to control the city administration. (PASUMF, ¶33). At the time of Mayor Vertrees' election, the Board consisted of 4 members: Tory Cameron, Michael Baird, Keith Aubuchon, and Christine Higgenbotham. (DSUMF, ¶5). Alderwoman Higgenbotham resigned in August of 2015. (DSUMF, ¶6).

In June 2015, Plaintiff Ohlms, Plaintiff Karras, and Plaintiff Fox warned the Board president Tory Cameron and Alderman Michael Baird to stop violating the Sunshine Laws by conducting city business in front of them and outside properly organized meetings. (PASUMF, ¶34). Otherwise, Plaintiffs said they would contact the Attorney General's Office to report them. (*Id.*)

At the June 2015 meeting, the Board passed an ordinance prohibiting the public from recording the open session meetings. (PASUMF, ¶35). After that meeting, Plaintiffs told the Board that this ordinance was unconstitutional for public meetings and could only apply to executive sessions. (PASUMF, ¶35). The Board stopped inviting the city attorney Jeff Robertson to the regularly scheduled board meetings, as well as special Board meetings. (PASUMF, ¶35).

In late July 2015, Ohlms contacted the Missouri Attorney General's Office and the Missouri Municipal League regarding repeated Sunshine Law violations being committed by the Mayor and the Board members. (PASUMF, ¶36). Karras and Fox also contacted the Attorney General's Office regarding the same Sunshine Law violations. (*Id.*) Each plaintiff made the Mayor and the Board aware that they were contacted the Attorney General's Office. (*Id.*) Plaintiffs contacted the Attorney General's Office because the Board and the Mayor would routinely conduct city business while visiting each other at their residences or in other social settings. (PASUMF, ¶37).

At the July 2015 board meeting, the Mayor and the Board discussed ways to increase revenue for the City. (PASUMF, ¶38). The Mayor wanted the police department to issue more tickets to generate more revenue, which the Plaintiffs believed violated Mack's Creek law. Ohlms spoke and said that the problem was not the police department, but the Board and the Mayor spending more money than the City generated. Karras told the Board, "We will not police for profit, we will police for public safety." (*Id.*).

In 2005 Alderman Baird pled guilty to a class C felony. (DSUMF, ¶13). In April 2015, Alderman Baird ran for re-election to the Board. (DSUMF, ¶12). In August 2015, the Mayor and the Board became aware of a new Missouri law that was to become effective on August 28, 2015 that disqualified anyone who had been found guilty or pleaded guilty to a felony from qualifying as a candidate for elective public office. (DSUMF, ¶14; PASUMF, ¶39). At the time the new law went into effect, Alderman Baird was not a candidate for the Board, since he had won re-election in April 2015. (DSUMF, ¶15). Plaintiffs became aware that Alderman Baird had a felony conviction, which Plaintiffs believed disqualified Baird from his position as an alderman. (PASUMF, ¶40). Plaintiffs Karras and Fox conducted an investigation into whether

Alderman Baird falsified his Declaration of Candidacy form and contacted the Lincoln County Prosecuting Attorney's office to request that criminal charges be filed against Alderman Baird. (DSUMF, ¶18). Plaintiff Fox alleged that the City attorney instructed him to file criminal charges against Mayor Vertrees, Alderman Baird, and Alderman Aubuchon for interfering with and disrupting a criminal investigation and prosecution. (DSUMF, ¶19).

In late August/early September 2015, the City received numerous citizen complaints regarding Alderman Baird's prior felony conviction and its effect on his qualifications to serve on the Board. (DSUMF, ¶17; PASUMF, ¶42). Between August 28 and September 2, 2015, Plaintiffs collected six (6) citizen complaints, requesting that Alderman Baird be removed from office. (PASUMF, ¶44). Plaintiffs claim that the Board and Mayor Vertrees were upset that Plaintiffs gathered the citizen complaints. (PASUMF, ¶44).

On September 8, 2015, Plaintiffs were ordered by Mayor Vertrees to appear for a special Board meeting on September 9, 2015. (PASUMF, ¶45). On September 9, 2015, the Board voted to terminate the employment of Plaintiff Ohlms due to insubordination and failure to comply with the directions from the Mayor and the Board. (DSUMF, ¶21). Plaintiff Ohlms' stated acts of insubordination included refusing the direction of the Board to provide the Mayor with a debit card for use in emergencies, refusing the Mayor's directions to provide funds for hot dogs and supplies for a youth league baseball game that had been authorized by the Board, refusing to report to work when directed to by the Mayor, and making statements refusing to recognize the Mayor's authority. (DSUMF, ¶22). On September 9, 2015, the Board voted to terminate the employment of Plaintiff Fox due to his insubordination and failure to comply with the directions given to him by the Mayor and Board. (DSUMF, ¶23). Plaintiff Fox's stated acts of insubordination included refusal to follow the directions of the Mayor and the Board with respect

to patrol shifts, and office hours, and his refusal to follow instructions to supervise the morning school bus stop and loading of children. (DSUMF, ¶24). On October 8, 2015, the Board voted to terminate the employment of Plaintiff Karras for insubordination and refusal to comply with the directions given to him by the Mayor and Board. (DSUMF, ¶25). Plaintiff Karras' stated acts of insubordination included refusing to follow the direction of the Mayor and the Board with respect to patrol shifts and office hours, refusing to follow instructions to supervise the morning bus stop and loading of children, and failing to produce a written policy and procedure manual as directed by the Board. (DSUMF, ¶26). The Board members and Mayor claim that they were not aware that Plaintiff Ohlms made reports regarding potential Sunshine Law violations to the Missouri Municipal League or the Missouri Attorney General's office at the time the Board elected to terminate Plaintiff Ohlms' employment. The Board members and Mayor also claim they were not aware of Plaintiff William Karras' and Plaintiff Joshua Fox's report to the Lincoln County Prosecuting Attorney's Office concerning Alderman Baird's prior felony conviction at the time the Board elected to terminate Plaintiff Karras' and Plaintiff Fox's employment. (DSUMF, ¶27). However, following Plaintiffs' discharges, board president Tory Cameron typed a two (2) page letter regarding the discharge of Ohlms. (PASUMF, ¶48). Cameron stated that Ohlms was discharged as an act of retaliation by Mayor Vertrees for Ohlms reporting the Sunshine Law violations. Her letter concluded, "This is nothing more than a personal vendetta and retaliation against Mr. Ohlms by Mayor Vertrees for bringing to the Board's, the Missouri Municipal League's and Attorney General's attention of various Sunshine Law Violations by Mayor Vertrees." (PASUMF, ¶48).

## DISCUSSION

### A. Motion for Summary Judgment Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. *Id.*

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the

facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

### B. Discussion

#### 1. Speech Protected by First Amendment

"To establish a prima facie case of retaliatory termination, a plaintiff must both allege and prove: (1) his speech was protected by the First Amendment; (2) the governmental employer discharged him from employment; and (3) the protected speech was a 'substantial or motivating factor in the defendant's decision to take the adverse employment action.'" *Rynders v. Williams*, 650 F.3d 1188, 1194 (8th Cir. 2011) (citing *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654–55 (8th Cir. 2007)); *see also Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007)." If this showing is made, the burden shifts to the employer to demonstrate that it would have taken the same action regardless of her First Amendment activities." *Rynders*, 650 F.3d at 1194; *Altonen*, 487 F.3d at 559. "Speech is protected if it relates to a matter of public concern; if this is shown, the court must then determine whether [the plaintiff's] First Amendment interest outweighs any injury to the department's efficient operations." *Altonen*, 487 F.3d at 559 (citing *Kincade v. City of Blue Springs*, 64 F.3d 389, 395 (8th Cir.1995); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)).

The City argues that Plaintiff Ohlms' statements are not entitled to First Amendment protection. (ECF No. 20 at 4-5). Plaintiff Ohlms alleges that the City terminated his employment in retaliation for Ohlms' reports to the Missouri Municipal League, the Missouri Attorney General's Office, and to Plaintiffs Karras and Fox concerning potential Sunshine Law violations by the City and/or Alderman Baird's prior felony conviction. The City argues that Ohlms' job duties as the City Clerk included "maintaining a general understanding of and ensuring

compliance with the Sunshine Law." (ECF No. 20 at 5). Thus, the City argues "any speech by Plaintiff Ohlms concerning possible Sunshine Law violations, or Alderman Baird's felony conviction and its effect on his qualifications to sit on the Board, would fall within the scope of Plaintiff Ohlms' official duties and responsibilities and would not comprise 'citizen speech' entitled to First Amendment protection." (ECF No. 20 at 5).

The City further argues that Plaintiff Karras and Plaintiff Fox did not comment as citizens on a matter of public concern. (ECF No. 20 at 5-7). Plaintiffs Karras and Fox alleged that the City terminated their employment in retaliation for their reports to the Lincoln County Prosecuting Attorney's Office, asking for criminal charges against Alderman Baird. Karras and Fox also alleged that Alderman Baird falsified his Declaration of Candidacy for the Board, which is a Class D felony under Mo. Rev. Stat. §115.631. The City argues that Karras and Fox went to the Lincoln County Prosecuting Attorney's Office to ask that criminal charges be filed against Alderman Baird. (ECF No. 20 at 7). Based upon this report, the City contends that its attorney instructed Plaintiff Fox to "file for criminal charges" against Mayor Vertrees, Alderman Baird, and Alderman Keith Aubuchon for interfering with a criminal investigation. (ECF No. 20 at 7). The City argues that Plaintiffs Karras and Fox's report to the Lincoln County Prosecuting Attorney's Office constitutes speech made pursuant to their official duties as police officers for the City. Thus, the City argues that Plaintiffs Karras and Fox "were engaged in employee speech and were not commenting as citizens on matters of public concern such that their speech would be entitled to First Amendment protection." (ECF No. 20 at 7).

In response, Plaintiffs argue that they criticized the Board and Mayor Vertrees based upon information they gained from their employment but not as part of their official duties. (ECF No. 24 at 9). Plaintiffs note that city administrators and police officers do not routinely

make Sunshine Law violation complaints regarding their employer as part of their official duties. (ECF No. 24 at 9). Likewise, Plaintiffs argue that encouraging the removal of a public official is uncommon, as is complaining about unconstitutional ordinances and unlawful employer practices. (ECF No. 24 at 9). Unlike the cases cited by the City,[1] Plaintiffs argue that they did not speak pursuant to their official duties. (ECF No. 24 at 9). Plaintiffs argue that there is substantial evidence of Plaintiffs' protected speech in the affidavits of Plaintiffs and exhibits to support their First Amendment claims. (ECF No. 24 at 9).

The Court cannot hold as a matter of law that Plaintiffs' actions and speech were pursuant solely to Plaintiff's official duties. As the Supreme Court noted, in *Lane v. Franks*:

> It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials—speech by public employees regarding information learned through their employment—may never form the basis for a First Amendment retaliation claim. Such a rule would place public employees who witness corruption in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs.

*Lane v. Franks*, 134 S. Ct. 2369, 2380, 189 L. Ed. 2d 312 (2014). Construing the record in a light most favorable to Plaintiffs, the Court holds that a genuine issue of material fact exists as to whether Plaintiffs were acting pursuant to their official duties when they reported the Board and Mayor Vertrees' illegal acts. As noted, Plaintiffs reported various Sunshine Law violations and Alderman Baird's apparent disqualification from his position as a Board Member. Evidence exists that Plaintiffs performed these acts outside of their public duties. For example, Plaintiffs contacted the city attorney and created a form for citizens to make complaints against the alderman. (ECF No. 22-2, ¶17; ECF No. 22-4, ¶16). These acts were separate and apart from the criminal prosecution by the police department. (ECF No. 22-2, ¶16; ECF No. 22-4, ¶15).

---

[1] *Garcetti v. Ceballos*, 547 U.S. 410, 413, 126 S. Ct. 1951, 1955, 164 L. Ed. 2d 689 (2006) and *Buehrle v. City of O'Fallon, Mo.*, 695 F.3d 807, 809 (8th Cir. 2012).

Further, the Court finds that the City has not presented evidence that Plaintiffs' reports to the Missouri Attorney General's Office and the Missouri Municipal League regarding repeated Sunshine Law violations committed by the Mayor and the Board members were made pursuant to their official duties. Although Ohlms may have been required to have some knowledge of the Sunshine laws, there is no allegation that reporting such violations, particularly to the Missouri Attorney General's Office and the Missouri Municipal League, were part of his duties. The City has not shown that Plaintiffs made these reports as part of their official chain of command. Therefore, the Court holds that an issue of fact exists regarding whether Plaintiffs performed their acts as part of their public duties.

## 2. City's Interests Outweighs Plaintiffs' Interests

Having found that Plaintiffs' comments touched upon matters of public concern, the Court must balance Plaintiffs' free speech rights against the interests of the City. *Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389, 397 (8th Cir. 1995); *Pickering*, 391 U.S. at 568. "[I]f the possibility of a First Amendment claim has arisen, '[the court] must ask whether [the employer] has produced evidence to indicate the speech had an adverse impact on the efficiency of the [employer's] operations.'" *Hemminghaus v. Missouri*, 756 F.3d 1100, 1111 (8th Cir. 2014) (quoting *Lindsey v. City of Orrick, Mo.*, 491 F.3d 892, 900 (8th Cir. 2007)). Under the *Pickering* balancing test, the Court must balance the interest of the plaintiffs, as citizens, "in commenting upon matters of public concern [against] the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Shands v. Kennett*, 993 F.2d 1337, 1342 (8th Cir.1993) (quoting *Pickering*, 391 U.S. at 568); *Sexton v. Martin*, 210 F.3d 905, 911 (8th Cir. 2000). "Factors relevant in conducting this test are whether the speech creates disharmony in the workplace, impedes the speaker's ability to perform his duties or impairs

working relationships with other employees." *Kincade*, 64 F.3d at 397; *Hemminghaus*, 756 F.3d at 1112 (quoting *Barnard v. Jackson Cnty., Mo.*, 43 F.3d 1218, 1224 (8th Cir. 1995)).

The City argues that Plaintiffs were fired for insubordination. (ECF No. 20 at 8). The City argues that the Plaintiffs refused to follow directions from the Mayor and the Board, which created conflict among City officials, Plaintiffs, and other City employees. (ECF No. 20 at 8). The City contends that Plaintiffs' speech regarding potential Sunshine Law violations and Alderman Baird's prior felony only exacerbated this conflict. (ECF No 20 at 8-9). The City notes that its small size requires harmonious relationships among employees and City officials in order to effectively provide services to residents. The City further argues that the topics of Plaintiffs' speech were publicly known prior to Plaintiffs making their speech. Therefore, the City contends that little public interest was served by Plaintiffs' speech, which was already known to the public. Rather, the City claims that Plaintiffs' insubordination made it difficult for the City to provide services to residents and outweighed the Plaintiffs' interests in commenting on the Sunshine Law violations and/or Alderman Baird. (ECF No. 20 at 9).

In response, Plaintiffs contend that evidence of pretext precludes the Court from finding that the City had a superior interest that outweighed Plaintiffs' First Amendment Rights. (ECF No. 24 at 10-11). Plaintiffs note that Board of Alderman President Tory Cameron wrote a two (2) page typed statement, which confirmed that Mayor Vertrees had no authority to control or discipline Ohlms and that his discharge was in retaliation for his exercise of his free speech. (ECF No. 24 at 10). Plaintiffs assert that Karras and Fox "were discharged for the same pretextual reason of insubordination." (ECF No. 24 at 11). Further, Plaintiffs maintain that the City's argument that its small size necessitates close and harmonious relationships is a nonstarter. Plaintiffs note that there is no "small town exception" to the First Amendment.

The Court holds, based upon the evidence currently before the Court, that the City's interests do not outweigh the Plaintiffs' First Amendment interests as a matter of law. The City has identified the desire for "harmonious" relations as its interest that outweighs Plaintiffs' right to speak and report violations. The Court finds the City's purported interest in harmony to be generic to every municipal conflict. In addition, the Court holds that Plaintiffs have provided evidence that the City's interest in harmonious relationships is mere pretext for the Board's retaliation against Plaintiffs. Plaintiffs provided the statement of Board President Tory Cameron, who indicated that Ohlms was retaliated against based upon his criticisms of the Board and the Mayor. Therefore, the Court holds that there is an issue of fact regarding whether the City's interests outweigh Plaintiffs' First Amendment rights and precludes entry of summary judgment.

### 3. **Plaintiffs' Speech Was Not The Motivating Factor**

The City argues that it is entitled to judgment as a matter of law because the uncontroverted material facts demonstrate that neither the Board nor Mayor had knowledge of Plaintiffs' speech at the time the Board elected to terminate Plaintiffs' employment. (ECF No. 20 at 9-10). The City claims that the Mayor and all Board members testified that they had no knowledge of Plaintiffs' speech at the time Plaintiffs were terminated. (ECF No. 20 at 10). The City asserts that Plaintiffs have not produced any direct or circumstantial evidence that the Board or Mayor had knowledge of Plaintiffs' speech at the time they were terminated. Further, the City claims that the record demonstrates that Plaintiffs were terminated for their insubordination. Therefore, the City claims it is entitled to summary judgment because Plaintiffs' speech was not the motivating factor behind the Board's decision to terminate Plaintiffs. (ECF No. 20 at 10).

Again, Plaintiffs respond with Board President Tory Cameron's statement, which states that the Board terminated Ohlms out of retaliation, as evidence that Plaintiffs' speech was the motivating factor in the decision to terminate Plaintiffs' employment. (ECF No. 24 at 11). Plaintiffs state that Karras and Fox were also discharged for the same pretextual reasons as Ohlms. Noting that the City never took Plaintiffs' depositions, Plaintiffs assert that the current factual record, including affidavits and evidence, precludes entry of summary judgment.

The Court holds that an issue of fact exists regarding whether the Mayor and the Board knew of Plaintiffs' speech at the time that they were terminated. Board President Tory Cameron's statement that Ohlms' termination was motivated by retaliation provides support for a finding that the Board knew of Plaintiffs' speech prior to their termination. (ECF No. 22-7). Similarly, Plaintiffs' affidavits state that they told the Board that they had contacted the Attorney General's Office in July 2015 regarding the Sunshine Law violations. (ECF No. 22-2, ¶10; ECF No. 22-3, ¶10; ECF No. 22-4, ¶10). The Court finds this evidence presents an issue of fact regarding whether the Mayor and Board knew about Plaintiffs' speech at the time of their termination. Therefore, the Court denies the City's motion for summary judgment on this basis.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant City of Foley, Missouri's Motion for Summary Judgment (ECF No. 18) is **DENIED**.

Dated this 5th day of June, 2017.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**